IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## Richmond.

BLANTON v. COMMONWEALTH.

JANUARY 17, 1895.

1. COUNTY TREASURER—*Official Bonds—Approval by County Court.*—County Courts are charged with the duty of superintending the execution of official bonds of County treasurers, and their approval is necessary to complete the execution and delivery of such bonds, and to make them obligatory ; but this approval must appear of record.

2. COUNTY TREASURER—*Official Bonds—Approval—Alteration.*—Where the record shows that the Court has designated and approved certain persons as sureties on the official bond of a County treasurer, no alteration can be made by leaving off a name, or substituting another therefor. The bond must conform to the judgment of approval.

3. COUNTY TREASURER—*Official Bonds—Plea nul tiel record—Variance—Discharge of Surety.*—In a motion against a County treasurer and his sureties on his official bond as such treasurer, the defendants plead *nul tiel record*, and issue is joined on this plea. The plaintiff vouches the order of approval of the County Court showing the names of eight persons accepted as sureties, and offers in evidence a bond containing the names of the principal and of the *eight* sureties, but signed by only *seven.*

*Held:*

There was a material variance between the record of the bond accepted by the County Court and the bond in suit, and the sureties are discharged.

VOL. XCI—1

| 91 | 1 |
| 91 | 155 |
| 91 | 1 |
| 97 | 469 |
| 91 | 1 |
| 98 | 41 |
| 98 | 42 |
| 98 | 45 |

Statement.

*Quære*—Can the plea of *non est factum* be pleaded to an action on an official bond taken and approved by a court of record, where no fraud is alleged?

4. SURETIES—*Variation of Agreement.*—Sureties stand upon the letter of their contract, and any variation in the agreement to which they have subscribed, which was made without their knowledge or consent, and which may prejudice them, or which may amount to the substitution of a new agreement for the one subscribed, will discharge them.

Error to a judgment of the Circuit Court of the city of Richmond.

*Reversed.*

This was a motion by the Commonwealth in the Circuit Court of Richmond, on the official bond of Peter B. Crowder, treasurer of Amelia county, bearing date June 23, 1887, against said treasurer, and the sureties on his bond.

The Commonwealth, through the Attorney General, gave notice to the defendants in the Circuit Court that, on a day mentioned in the notice, it would ask the Circuit Court of the city of Richmond, then in session, for judgment against them for the sum stated in the notice, with interest.    The notice was in the following form, to-wit:

"Notice.

To P. B. Crowder, principal, and R. W. Blanton, M. A. Blanton, Jacob Schlegel, R. E. Bridgeforth, J. A. Wallace, W. L. Scott, and S. D. Vaughan, sureties on his official bond as treasurer of Amelia county, bearing date the 23d day of June, 1887:

Take notice that on the 16th day of May, 1892, the Commonwealth of Virginia will ask the Circuit Court for the city of Richmond, then in session, to render judgment against you for the sum of $4,386.93, due the Commonwealth of Virginia for taxes, &c., with interest on $248.36 part thereof, from

November 24th, 1887, and on $68.28 another part thereof, from July 25th, 1889, and on $72.79 another part thereof, from June 30th, 1890, and on $2,577.59 another part thereof, from June 15th, 1891, and on $1,404.23 the residue thereof, from July 1st, 1891, in conformity with statutes in such cases made and provided.     At which time and place you will please attend.

The Commonwealth of Virginia,<br>By R. TAYLOR SCOTT,<br>Attorney General."

The defendants appeared and demurred generally and specially, and also moved to quash the notice.   The demurrers were overruled and the motion to quash denied.   Thereupon, the defendants tendered four pleas in writing, to the reception of each of which the Commonwealth objected, and the Circuit Court sustained the objection to each of these pleas, except No. 4, which was a plea of *nul tiel* record, on which issue was joined and judgment rendered for the Commonwealth July 18, 1893.   Pleas 1 and 2 were special pleas in the nature of pleas of *non est factum*, and were duly sworn to.   Plea No. 3 sets forth that after the execution of the bond in suit, a motion had been made in the County Court of Amelia county by one of the sureties in the bond against his principal, to require him to give a new bond as treasurer of Amelia county, or else be removed from his office of treasurer; that on the hearing of this motion the County Court of Amelia county entered an order removing P. B. Crowder from the office of treasurer, but on the application of Crowder, the County Court suspended the execution of its judgment for ten days, in order to enable him to apply to the Circuit Court of Amelia county for a writ of error; that the order of suspension was not to be effectual until Crowder should execute a suspending bond in the penalty of $1,000, with good security, with condition to "pay all

damages as may accrue to any person by reason of the said suspension," which bond he accordingly gave; that a writ of error and supersedeas to the judgment of the County Court was awarded by the Circuit Court of Amelia county, and a supersedeas bond, with good security, was required of and given by Crowder, in the penalty of $10,000, with condition to perform the judgment of the County Court, if the same should be affirmed, or the writ of error dismissed, and also to "pay all damages, costs and fees which should be awarded against, or incurred by, said Peter B. Crowder, in consequence of said writ of error and supersedeas;" that the Circuit Court affirmed the judgment of the County Court, and that the whole default of said Peter B. Crowder occurred during the pendency of said writ of error and supersedeas, and at a time when it had been adjudged that he was no longer treasurer of Amelia county, and so the defendants were not liable for the default. The judgment of the Circuit Court of the city of Richmond being adverse to the defendants, they obtained a writ of error from this court. Sundry exceptions were taken by the defendants to rulings of the Circuit Court, which, together with the other facts, sufficiently appear from the opinion of the court.

*Meade Haskins*, *Wm. H. Mann*, and *W. M. Flanagan*, for the plaintiffs in error.

1. The notice is not sufficient because it does not show for what taxes the judgment is asked, nor by whom due, nor on what account they are due. *Monteith, sheriff*, v. *Commonwealth*, 15 Gratt. 172. *Dunn's Case*, 27 Gratt. 608.

2. The court erred in rejecting, and refusing to allow the defendants to file, the plea of *non est factum*. This was the proper method of denying the execution of the bond, or of showing such material alteration, additions, or changes in the

bond as to render it void.  4 Minor's Inst. Part I, p. 691;
Stephen on Pleading [159]; 1 Chitty Pl. [478-479]; 5 Rob.
Prac. 241; *Hayes & wife* v. *Va. M. Protective Association*,
76 Va. 225; *Dey* v. *Martin*, 78 Va. 1; *Christian & Gunn*
v. *Keen*, 80 Va. 369, 376; *Grand Chute* v. *Winegar*, 15
Wall. 355, 369; *Chambers County* v. *Clews*, 21 Wall. 322;
*Culwell* v. *Commonwealth*, 17 Gratt. 391 and 394; *Vaughan*
v. *Commonwealth*, 17 Gratt. 386 and 387.

3. The court erred in rejecting "plea No. 2," which sets
out clearly the *condition precedent* upon which the sureties had
agreed to execute the bond, and which condition was never
performed.  5 Rob. Prac. 233, 234; *Bean* v. *Parker*, 17
Mass. 605-6; *Sharp* v. *United States*, 4 Watts, 23; *King* v.
*Smith*, 2 Leigh, 157; *Hicks* v. *Goode*, 12 Leigh, 493;
*Howe* v. *Peabody*, 2 Gray (Mass.), 556-7; *Fletcher* v. *Leight*,
4 Bush (Ky.), 303; Va. Code, sections 812, 813, 814, 816
and 817.

Where the name of a surety is stated in the body of a bond
but he fails to sign it, this is notice of the condition.  It is evi-
dently imperfect and puts the obligee on enquiry.   *Ward* v.
*Churn*, 18 Gratt. 801; 2 Brandt on Suretyship, sec. 411;
*Fletcher* v. *Leight*, 4 Bush (Ky.), 303.   In the same connec-
tion, see *State Bank* v. *Evans*, 28 Am. Dec. 400 (N. J.);
*Sharp* v. *United States*, 28 Am. Dec. 749 (Penn.); *Allen* v.
*Marney*, 32 Am. Rep. 73 (Indiana); *Guild* v. *Thomas*, 25
Id. 703 (Ala.).

4. The court erred in rejecting "plea No. 3," which offered
a complete bar to the plaintiff's motion.

The treasurer had been removed by order of March 27,
1890.  To this order a writ of error and supersedeas was
awarded by the judge of the Circuit Court of Amelia, and the
treasurer was required to give the supersedeas bond "in the
penalty of $10,000, payable to the Commonwealth of Virginia,
and conditioned as the law directs."   This bond was given,

and the judgment of the County Court *affirmed* by the Circuit
Court March 13, 1893; and the plea avers that the defaults
occurred after March 27, 1890, so that the sureties on the
supersedeas bond are the persons liable for the default, and
not the sureties on the treasurer's bond.   The effect of the
decree of affirmance was to declare that the treasurer was out
of office from and after March 27, 1890.   An affirmance of a
judgment is a decision upholding the judgment.   1 Amer. &
Eng. Ency. 315; 1 Rapalje & Lawrence Law Dic. 37.

See also, in the same connection, 2 Bar. Chancy. Prac. sec.
395; *Neale* v. *Farinholt*, 79 Va. 54 and 57; *Shepherd* v. *Chap-
man*, 83 Va. 215 and 224; *Woodson* v. *Leyburn*, 83 Va. 843-
850; *Moss* v. *Moorman*, 24 Gratt. 115; *Higgins* v. *Crichton*,
98 N. Y. 626; *Westborn* v. *Pinney*, 76 Ala. 291, 294-5; 2
Freeman on Judgments, (3d edn.), secs. 382, 433.

5. The court erred in admitting in evidence the paper writ-
ing supposed to be the official bond of the treasurer.

The bond, being an official bond, was required to be entered
into before the County Court, or the judge thereof in vacation,
and the records of the court must show what bond was en-
tered into, and the bond when produced must correspond with
the record.   But the record shows that a bond with *eight* sure-
ties was accepted, and the bond produced contains only the
names of *seven.*   The variance is fatal.

Acts of Assembly, 1874-5 chap. 71; Acts of 1878-9, chap.
319, sec. 4.

6. The court below also erred in rejecting and excluding
the testimony of Jacob Schlegel.   He was one of the sureties
on the supposed official bond of the treasurer.

What *would* have been the testimony of this witness on the
trial, it is not proper for us to state here; but what *could* have
been his evidence is a matter of serious consideration for this
court, especially since he had just a few moments before made
affidavit both to the plea of *non est factum* and the plea of

*conditional execution and delivery*, which were offered by the defendants, and which were rejected by the court below.

Under the plea of *non est factum*, as we have seen above, he could have proved fraud; he could have proved that the official bond in question had never been executed; he could have proved that such alterations had been made in it and such additional and material matters inserted in it, since the alleged execution of it, as would render the instrument null and void.

Under the plea of conditional execution, *et sic non est factum*, he could have proved that the signing, with the condition precedent, made to the clerk and in the hearing of the judge of the County Court of Amelia county, that was never performed, also made the instrument void.

It is said that oral evidence cannot be allowed to contradict a record or written evidence, because the record imputes verity. But there are exceptions to this rule, and the case at bar comes within some of them.    For example, cases of fraud rendering the bond void, or where the instrument is equivocal, the circumstances under which it was made may be shown.    1 Green. Ev. sec. 284; *Towner* v. *Lucas*, 13 Gratt. 705, 710, 711, 714-16; *Crawford* v. *Jarratt*, 2 Leigh, 630.

Again, "Where an instrument indicates on its face that others were to execute it besides those who did execute it, it may be shown by evidence that the delivery, though made to the grantee or obligee, was conditional upon the execution of the instrument by the other parties, and not absolute." *Ward et als.* v. *Churn*, 18 Gratt. pages 801 and 808; *Hicks et als.* v. *Goode*, 12 Leigh, 479; *Wendlinger* v. *Smith et als.*, 75 Va. 309; *Per contra*, *Nash* v. *Fugate et als.*, 24 Gratt. 202; *Miller* v. *Fletcher et als.*, 27 Gratt. pages 403 and 406-7; *Nash* v. *Fugate et als.*, 32 Gratt. pages 595 and 602-3.

7. The court erred in rendering any judgment against the sureties.    The record did not warrant what was deduced from

it, and besides, one part of the record contradicts the other. On the plea of *nul tiel* record judgment should have been in favor of the sureties. 4 Minor's Inst. Part II, 1,026; 20 Amer. & Eng. Ency. Law, 503; *Jeter* v. *Spurgeon*, 27 Mo. Appl. 477; *Fletcher* v. *Leight*, 4 Bush (Ky.), 309.

*Attorney General R. Taylor Scott* and *R. Carter Scott* for the Commonwealth.

1. The notice was in all respects sufficient, and all that the law required.

2 Barton's Law Pr. 1,040; 4 Minor's Inst. Part II, p. 1,026; Va. Code, sec. 3,211; *Monteith, sheriff,* v. *Commonwealth*, 15 Gratt. 172; *Supervisors* v. *Dunn*, 27 Gratt. 608.

2. The plea of *non est factum* was properly rejected.

The bond in litigation is not a bond entered into in the country between man and man, but an *official bond made matter of record*, by statute, given by a person elected treasurer, and a condition precedent to assuming the duties of his office. (V. C., 1887, chap. 35, §§ 812, 816, and section 177).

Our lawmakers knew many bonds were of *straw*, and very many defenses made by obligors when sued, and therefore required that treasurer's bonds be made a record of the county court. (Code 1887, sec. 177; *Id.* 812, 816.)

The object of the statute is to prevent such defenses as are attempted in this case by causing the treasurer and his sureties to come before the County Court, justify as to their worth, enter into bond, and the bond made a record of the court; and this done, the obligors could not avoid the bond by pleas of *non est factum*, conditions unperformed *et id omne genus*. In the language of Burke, "the revenue is the state," therefore it is necessary to throw every possible safeguard around its collection.

Treasurer's bonds are completed deeds, made part and par-

cel of the record of our County Courts. Therefore, to them, when sued upon, the only proper plea is *nul tiel* record.

The record of the County Court showing the qualification of the treasurer, the giving of his bond and its approval by the court imports in itself absolute verity, and can only be tried by itself. Co. Litt, 260 A.; Best on Ev. secs. 218, 590; 2 Tuck. Com., 278; *Vaughan* v. *Commonwealth*, 17 Gratt. 386; *Calwell* v. *Commonwealth*, 17 Gratt. 391; *Quinn* v. *Commonwealth*, 20 Gratt. 130; *Supervisors* v. *Dunn*, 27 Gratt. 608; *Bias* v. *Floyd*, 7 Leigh, 640.

The cases cited by the plaintiff in error do not refer to *official bonds made matter of record*, but to bonds executed *in pais.*

3. The bond sued on is a *record* and cannot be avoided by pleas setting up conditional delivery. The court had no power to accept the bond on condition. Va. Code, secs. 812, 814; Throops "Public Officers," sec. 264, p. 275; *Bias* v. *Floyd*, 7 Leigh, 640; *Quinn* v. *Commonwealth*, 20 Gratt. 130, and other authorities hereinbefore cited. The case of *Fletcher* v. *Leight*, 4 Bush (Ky.), 309, cited by the plaintiff in error, has no application, because the statute of Kentucky is wholly unlike the Virginia statute.

The sureties are estopped to deny that they are sureties by virtue of an Act of Assembly passed for their relief and at their instance March 4, 1892. Acts 1891-2, ch. 734, p. 1122.

4. Crowder remained treasurer during the appeal to the Circuit Court, and his sureties are liable for all his acts *as treasurer.*

5. The fifth and sixth assignments of error are not good. The issue was *nul tiel record*, and this issue could only be tried by an inspection of the record. The bond was part of the record and was admissible, but the parol testimony of the sureties was not. *Bryan* v. *Glass*, 2 Hump. 390; 4 Minor's Inst. Part I, p. 732, and Part II, p. 1026, and authorities there cited; 2 Barton's Law Pr. (2d Ed.) 1035.

KEITH, P., delivered the opinion of the court.

The Commonwealth of Virginia, through its Attorney-General, gave notice to P. B. Crowder, principal, and R. W. Blanton, M. A. Blanton, Jacob Schlegel, R. E. Bridgeforth, J. A. Wallace, W. L. Scott, and Samuel D. Vaughan, sureties on his official bond as treasurer of Amelia county, bearing date 23d of June, 1887, that on the 16th day of May, 1892, the Circuit Court of the city of Richmond, then in session, would be asked to render judgment against them for $4,386.93, due the Commonwealth for taxes, with interest on the several sums, constituting that aggregate from the dates set out in said notice. The notice was returned duly executed by the sheriff of Amelia county, and the parties thereto appeared through their attorneys and moved the court to quash the notice, and also demurred, which motion and demurrer the Circuit Court overruled. At another day the defendants filed a special demurrer in writing to the notice of the motion, in which demurrer the Commonwealth joined, and that demurrer was also overruled by the Circuit Court. These rulings constitute the subject of the defendants' first bill of exceptions.

The defendants subsequently presented to the court three special pleas in writing, numbered 1, 2, and 3, to the filing of which the Commonwealth, by counsel, objected, and the objection was sustained. And this action of the court constitutes the subject of the defendants bills of exception Nos. 2, 3, and 4.

Upon plea No. 4, which is the plea of *nul tiel record*, the Commonwealth joined issue.

There can be no doubt as to the correctness of the action of the court in overruling the motion to quash the notice, and also in overruling the several demurrers. The notice is in the usual form, is sufficiently accurate and full, and gives the defendants all needful information as to the grounds of the Com-

Opinion.

monwealth's complaint against them. See *Board of Supervisors of Washington County* v. *Dunn*, 27 Gratt. 608.

Upon the ruling of the Circuit Court rejecting the special pleas offered by the defendants, this court expresses no opinion, deeming it unecessary in the view that is taken of this case to do so. The Circuit Court doubtless proceeded upon the idea that the qualification of the treasurer under the laws of the Commonwealth of Virginia, including the execution of his bond as such, constitutes a record which can only be impeached by a plea alleging fraud in its procurement. But, as before observed, this court at this time expresses no opinion as to the correctness of the ruling upon this point. The only plea presented in the Circuit Court, upon which issue was joined, was that of *nul tiel record*. Upon the trial of this issue the defendants offered to prove certain facts by E. H. Coleman, clerk of the County Court of Amelia county, and by Jacob Schlegel, one of the parties defendant; but upon motion of the Commonwealth, through her Attorney General, Jacob Schlegel was rejected as a witness; and this action of the court in excluding the evidence of Jacob Schlegel, and refusing to allow him to testify, is the subject of the defendant's 6th bill of exceptions.

The clerk, Mr. E. H. Coleman, went upon the stand and stated that the records mentioned were the original records of the qualification of P. B. Crowder, treasurer of Amelia county, and that the blank seal left with no signature opposite thereto, and between the signature of J. A. Wallace and Samuel D. Vaughan, was so made and left blank for the signature of A. C. Tucker, who never signed the same; and that the certificate at the end or foot of said supposed official bond in these words, namely:

"In Amelia County Court, June 23, 1887:

This bond was executed and acknowledged in open court by the obligors to the same, and ordered to be recorded:

　　　　　　Teste:　　　　E. H. COLEMAN, C. C."

was not written, nor the blanks thereof filled up, until some-time thereafter, and he thought it was after May, 1892, and that the interlineations of the names of R. W. Blanton and M. A. Blanton were written in the said order of Amelia County Court before the judge thereof signed it.

The only plea then being that of *nul tiel record*, and the only evidence in support of that plea being the testimony of E. H. Coleman, just referred to, and the record of the County Court of Amelia of June 23, 1887, together with the bond produced with said record, the Circuit Court decided against the defendants upon the plea, and held that there was such a record as the Commonwealth had declared upon, and, neither party demanding a jury, proceeded to ascertain the amount claimed to be due to the Commonwealth. It is insisted here that this judgment is erroneous, and that there is a material variance between the record relied upon by the Commonwealth in its notice, and that produced upon the trial, and that the plea of *nul tiel record* should have been sustained. We will therefore enquire:

First, was there a variance? And secondly, was it material?

It will be observed that the notice filed by the Attorney General at the institution of this proceeding in the Circuit Court is given to P. B. Crowder, principal, and R. W. Blanton, and six others, as sureties on his official bond as treasurer of Amelia county, bearing date the 23d of June, 1887, and that the name of A. C. Tucker nowhere appears in this notice. The record which is produced in support of the plea sets out that, "In Amelia County Court, June 23, 1887, Peter B. Crowder, who was on the fourth Thursday in May, 1887, duly elected by the qualified voters of the county of Amelia, treasurer for said county for the term of four years, commencing on the first day of July, 1887, this day appeared in open court, entered into and acknowledged a bond in the penalty of

$40,000, conditioned according to law, with R. W. Blanton, M. A. Blanton, R. E. Bridgeforth, Jacob Schlegel, W. L. Scott, A. C. Tucker, J. A. Wallace, and Samuel D. Vaughan, as his sureties, who waive the benefit of their homestead exemption, and made oath as to their sufficiency; and thereupon the said Peter B. Crowder appeared in court and qualified by taking the several oaths prescribed by law.'' That is the record. It is contended by the defendant in error here that it imports absolute verity; and, from that record it appears that the bond of the treasurer, executed by the principal and his sureties, and accepted for the Commonwealth by the County Court of Amelia, without which acceptance it could not be a completed instrument, contained the name of A. C. Tucker as one of the sureties. Upon the bond which accompanies the record, vouched by the Commonwealth in support of its contention, the name of A. C. Tucker does not appear. That there is a variance cannot be denied, nor is there in this record one word of explanation with respect to it, save the statement by the clerk of the court, and that is, that the vacant place opposite the signature immediately following that of J. A. Wallace was left blank in order that it might be executed by A. C. Tucker; but, if this be a record, the evidence of E. H. Coleman cannot be considered; and if it is to be considered, its tendency is to show that it was an uncompleted transaction, and would have the effect rather to discredit than to establish the bond.

In the case of *Fletcher, &c.,* v. *Leight, Barrett & Co.*; 4 Bush (Ky.), 303, a case very similar to this in many of its features, it appeared that one W. N. Peterson, who had been elected sheriff of Marshall County, Ky., appeared in the County Court with a certificate of election, and was thereupon duly sworn into office, and with Fletcher, Palmer, Stone, Harrell, Thompson, W. B. Ely, Johnson, and Mathis as his sureties, executed covenant as required by law. He entered upon the

discharge of his office, and had in his hands an execution in favor of the appellees, which he failed to return as required by law, and for that delinquency the appellees brought suit. The sureties made defense substantially on the pleas of *non est factum* and *nul tiel record*, and the Circuit Court found against them on the plea of *nul tiel record*. The proceedings on the other plea are not necessary to be here noticed.

It appears that, in Kentucky, the sheriff had to give three bonds, a county levy bond, a State revenue bond, and a general official bond. Ely, supposing that he had signed them all—all that were to be executed by the sheriff—left the court without executing the general official bond, upon which suit was afterwards instituted, and the court says: "As he did not sign the bond sued on, and there is no County Court order approving this bond without Ely's name, we are called on to determine whether it was obligatory on the other securities. The County Court being a court of record, can only speak by its record, especially in the absence of any issue by the pleadings of mistake or fraud; the approval, therefore, by the County Court, of an officer's securities, must appear on record.

However numerous and solvent the proposed securities may be, this does not make the bond obligatory until the court has passed its judgment of approval. Indeed, until this is done, it is not delivered to the Commonwealth, nor can be. It is this approval by the tribunal, designated by law, which completes its execution and delivery, and makes it obligatory."

This language is as applicable to the case at bar as to that in which it was used. The duty of the County Court of Amelia is essentially the same as that of the County Court of Marshall county, Ky.; and, if the name of W. B. Ely is substituted for that of A. C. Tucker, we have a substantially identical state of facts. There, as here, the County Court was charged with the duty of superintending the execution of official bonds. The County Court here, as in Kentucky, speaks

only by its record, and its approval is with us as necessary as it appears to have been in that case; and it may be said here, as it was declared there, "that it is the approval of the bond by the tribunal designated by law to superintend its execution, which completes its execution and delivery and makes it obligatory." The court goes on to say, "When the County Court, therefore, approves the proposed names and individuals as sureties in a bond, and directs its clerk to prepare the bond, he has no more authority to witness and accept it until all the named sureties sign it than he has to accept it without the principal's signature. If he may waive the signature of one surety, he may waive all.

When the court has designated certain persons and approved them as sureties, no alteration can be made by leaving off a name or substituting another therefor. The bond must be prepared and executed, in conformity to the judgment of approval, else it is not the bond approved and accepted by the court, and every alteration by the clerk, either in omitting a designated party or substituting another, is wholly unauthorized, and his attestation to such a bond of no validity."

There would then appear to be a variance. It remains to be considered whether that variance is material. In the case just quoted, in 4th Bush, the court says: "When the principal has proposed certain names as his sureties, and these have been approved by the court, each of the sureties, as he signs, has both the legal and moral right to expect and rely upon the officers to see that each approved party shall sign it, and not to regard it as executed and delivered until so perfected."

Now here the bond as prepared contains the names of eight sureties. The burden and responsibility which they assumed was to be distributed among eight, whereas the bond sought to be enforced distributes that liability among seven. Surely this most seriously affects the rights of the sureties in respect to contribution among themselves in the event of the default of their principal.

In conclusion, I will say, that it must always be borne in mind that there is no evidence to fix any liability upon the plaintiff in error save the record of Amelia county, and that issue was joined upon no plea save that of *nul tiel record.* All other pleas, and all other evidence which might have thrown light upon this transaction, were excluded at the instance of the Commonwealth. Upon the record adduced, the parties must stand or fall; and that record shows the acceptance by the court charged with the duty of seeing to its execution, of the bond with the signatures of eight sureties thereto, while the bond produced presents signatures of but seven. On *principle* and authority, those sureties had a right to expect and to require that every name presented and accepted should appear upon the bond. The Commonwealth, through its officers, had notice, as appears on the face of the record, of the names agreed to be taken. It was the duty of her officers to see to it that the bond agreed to by the parties should be executed, and none other, and these defendants had a right, as was said in 4th Bush—a right, in morals and in law—to rely upon the due performance by the agents and officers of the State of the duties with which they were charged by law. By inadvertance, doubtless, innocently and without any wrongful intent, that duty was neglected. Who shall bear the consequences? Innocent parties, or the Commonwealth, by whose agents and officers the mistake was committed? Sureties stand upon the letter of their contract. Their liability is always *strictissimi juris*, as was said in *McCulsky* v. *Cromwell*, 1 Kernan, at p. 598, and cannot be extended by construction. To the same effect, see *Smith* v. *United States*, 2 Wallace, at 237. The correct rule, says the Supreme Court of the United States, in the case just cited, is that "Any variation in the agreement to which the surety has subscribed, which was made without the surety's knowledge or consent, and which may prejudice him, or which may

amount to the substitution of a new agreement for the one subscribed, will discharge the surety." Here we have seen the sureties subscribed to a bond duly accepted by the County Court of Amelia, in which their liability was divided among eight. The attempt here is to enforce a liability upon a bond in which there are but seven obligors. There is no evidence in this case which suggests the idea, or creates a suspicion, that the sureties, or either of them, assented or consented to the material change thus made in the contract by which they had agreed to be bound, or that they had any knowledge thereof, or were in possession of any fact which should have put them upon enquiry.

For these reasons, we are of opinion that the judgment of the Circuit Court should be reversed; and this court, proceeding to render such judgment as the Circuit Court should have rendered, will direct that the notice by which the proceeding in the Circuit Court was commenced, shall be dismissed.

REVERSED.